UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| THELBERT L. HAMPTON,<br>        *Plaintiff*,<br><br>        v.<br><br>KIRSTEN SHEA, *et al.*,<br>        *Defendants*. | No. 3:22-cv-00610 (VAB) |

**INITIAL REVIEW ORDER**

Thelbert L. Hampton ("Plaintiff"), currently confined at MacDougall-Walker

Correctional Institution in Suffield, Connecticut, has filed a Complaint *pro se* under 42 U.S.C. §

1983. Mr. Hampton names three defendants, Regional Chief Operating Officer Kirsten Shea,

Medical Supervisor Tawanna Furtick, and Medical Records Clerk Julio Rodriguez (together,

"Defendants"). Mr. Hampton alleges that the Defendants improperly disclosed his medical

records without authorization in violation of his Fourteenth Amendment due process rights. Mr.

Hampton seeks damages from all Defendants in their individual capacities.

For the reasons discussed below, the Complaint is **DISMISSED** without prejudice to

filing an Amended Complaint by **September 9, 2022**.

**I.      FACTUAL BACKGROUND**

On January 22, 2022, Mr. Hampton allegedly submitted a request addressed to Dr. Pillai

and Nurse Boilard, seeking copies of the medical report where it was determined that his T-cells

and viral level loads were very low. Compl. ¶ 8, ECF No. 1 (Apr. 29, 2022) ("Compl.").

Defendant Rodriguez allegedly responded to the request with the requested documents on

February 14, 2022. *Id.* ¶ 9.

On February 5, 2022, Mr. Hampton allegedly submitted a request addressed to Defendant Rodriguez, seeking a copy of his medical records from February 26, 2021. *Id.* ¶ 10. The following day, Mr. Hampton allegedly submitted another request to Defendant Rodriguez seeking a copy of his current active medical problem sheet. *Id.* ¶ 12. Defendant Rodriguez allegedly provided these records on February 28, 2022. *Id.* ¶¶ 11, 13.

On February 11, 2022, Mr. Hampton allegedly submitted a general request asking whether he was still receiving Selsum Blue shampoo and seeking a copy of his medical problem sheet. *Id.* ¶ 14. Nurse McCarthy allegedly responded to the request noting that a refill request had been sent to the pharmacy on February 13, 2022. *Id.* ¶ 15. Mr. Hampton allegedly never received the problem sheet. *Id.*

Also on February 11, 2022, Mr. Hampton allegedly submitted a second request seeking all statements concerning HIV-Aids information and the records from January 21-22, 2022, when he was last seen by Dr. Pillai concerning his viral loads and a diagnosis of prediabetes. *Id.* ¶ 16. Defendant Rodriguez allegedly provided the records on February 15, 2022. *Id.* ¶ 17.

On February 15, 2022, another inmate, Anthony Thompson, allegedly told Mr. Hampton that Mr. Thompson had received Mr. Hampton's medical records in the mail and the envelope was addressed to Mr. Thompson. *Id.* ¶ 18. Mr. Hampton allegedly never authorized disclosure of his medical records to Mr. Thompson. *Id.* ¶ 19. Mr. Hampton and Mr. Thompson allegedly informed the unit officer, who called the medical unit to have the matter rectified. *Id.* ¶ 20.

On the way to the medical unit, Mr. Hampton and Mr. Thompson allegedly saw Defendant Furtick in the hallway. *Id.* ¶ 21. After they allegedly explained the situation, Defendant Furtick allegedly said that was a violation of privacy and it should not have happened. *Id.* Defendant Furtick allegedly took Mr. Hampton's medical records from Mr. Thompson and

said that the situation would be rectified. *Id.* ¶ 22.

On February 16, 2022, Mr. Hampton allegedly sent a request to the warden regarding the incident with his medical records. *Id.* ¶ 23. The warden allegedly responded that the matter was being addressed. *Id.* ¶ 24.

On February 18, 2022, Mr. Thompson allegedly gave Mr. Hampton a copy of the request he had submitted to the medical supervisor inquiring as to what had transpired with the medical records he had requested for himself, when he had allegedly instead received Mr. Hampton's. *Id.* ¶ 25. Defendant Rodriguez allegedly responded to Mr. Thompson's request stating that new procedures had been implemented to address the situation. *Id.* ¶ 26.

On February 19, 2022, Mr. Hampton allegedly sent a letter to the Director of Health Services regarding the incident but did not receive a response. *Id.* ¶¶ 27–28.

On February 24, 2022, Mr. Hampton allegedly filed a grievance regarding the February 15, 2022 incident. *Id.* ¶ 29. Defendant Shea allegedly responded to the grievance and stated that staff did not follow appropriate procedures. *Id.* ¶ 30.

Also on February 24, 2022, Mr. Hampton allegedly spoke to the warden by phone regarding the situation. *Id.* ¶ 31. The warden allegedly inquired how he was getting along in the unit. *Id.*

On March 6, 2022, Mr. Hampton allegedly submitted a request to Defendant Furtick seeking a copy of the incident report for the February 15, 2022 incident. *Id.* ¶ 32. On March 21, 2022, Defendant Furtick allegedly responded that Mr. Hampton's request would be forwarded to the medical records supervisor. *Id.* ¶ 33. As of the filing of his Complaint, Mr. Hampton allegedly had not yet received a copy of the report. *Id.* ¶ 34.

## II.    STANDARD OF REVIEW

Under section 1915A of title 28 of the United States Code, a court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b); *see also Liner v. Goord*, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (explaining that, under the Prisoner Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is mandatory); *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district court screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint *sua sponte* if, *inter alia*, the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted.'" (quoting 28 U.S.C. § 1915A)).

In reviewing a *pro se* complaint, the court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). This requirement applies both when the plaintiff pays the filing fee and when he proceeds *in forma pauperis*. *See Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam). *Orr v. Waterbury Police Dep't*, No. 3:17-CV-788 (VAB), 2018 WL 780218

Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "'A document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Boykin v. KeyCorp.*, 521 F.3d 202, 214 (2d Cir. 2008) (quoting

*Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). However, notwithstanding this liberal interpretation, a *pro se* complaint will not survive dismissal unless the factual allegations meet the plausibility standard. *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015) ("At the same time, a *pro se* complaint must allege 'enough facts to state a claim to relief that is plausible on its face.'" (quoting *Twombly*, 550 U.S. at 570)).

III.   **DISCUSSION**

   **A.  Fourteenth Amendment Right to Privacy**

   The Second Circuit has held that an individual's right to privacy concerning confidential medical information extends to prisoners. *See Powell v. Schriver*, 175 F.3d 107, 112 (2d Cir. 1999). This privacy interest is especially important in the prison context where an inmate's possession of confidential information about another inmate can be used in threatening ways. A prisoner's right to confidentiality, however, is not absolute. The interest varies with the underlying condition. *See id.* at 111 (concluding "that the interest in the privacy of medical information will vary with the condition" and recognizing a privacy interest in transsexualism, a "condition . . . likely to provoke both an intense desire to preserve one's medical confidentiality, as well as hostility and intolerance from others").

   HIV status, the condition at issue here, also is considered sensitive information warranting protection. *See Nieves v. Booker*, No. 05-CV-00017S (Sr), 2013 WL 4604028, at *4 (W.D.N.Y. Aug. 28, 2013). When an inmate has a privacy interest in the confidentiality of his medical information, "prison officials can impinge on that right only to the extent that their actions are 'reasonably related to legitimate penological interests.'" *Dash v. Mayers*, No. 19-CV-414 (GBD) (JLC), 2020 WL 1946303, at *4 (S.D.N.Y. Apr. 23, 2020) (quoting *Powell*, 175 F.3d at 112), *report and recommendation adopted sub nom. Dash v. Doe*, 2020 WL 3057133

(S.D.N.Y. June 9, 2020). "Where the medical information is spread through 'humor or gossip,' it is more likely that the inmate's right to privacy will have been violated." *Levola v. Fischer*, No. 9:09-CV-0833, 2010 WL 11602538, at *17 (N.D.N.Y. Sept. 29, 2010) (internal citation omitted).

Mr. Hampton's privacy claim, however, fails for several reasons.

First, Mr. Hampton does not indicate who sent his medical records to Mr. Thompson. It appears that Mr. Hampton assumes that, because Defendant Rodriguez sent medical records to him, Defendant Rodriguez sent the records to Mr. Thompson as well. While it is possible that Mr. Hampton's assumption is correct, it is equally possible that the records were sent by another staff member. Mr. Hampton must state a plausible claim to survive initial review. *See Twombly*, 550 U.S. at 555 (court must determine whether well-pleaded factual allegations make it plausible—not merely possible—that the pleader is entitled to relief).

Second, the disclosure may have been negligent or inadvertent. Mr. Hampton has submitted a copy of his grievance wherein Defendant Shea acknowledged that staff did not follow proper procedures. Compl. at 45. It is well established that negligent conduct is ordinarily not sufficient to state a claim alleging the denial of Fourteenth Amendment due process rights. *See Daniels v. Williams*, 474 U.S. 327, 330 (1986); *Davidson v. Cannon*, 474 U.S. 344, 347 (1986) ("[T]he Due Process Clause of the Fourteenth Amendment is not implicated by the lack of due care of an official causing unintended injury to life, liberty or property. In other words, where a government official is merely negligent in causing the injury, no procedure for compensation is constitutionally required.").

And inadvertent or negligent disclosure of an inmate's confidential medical information does not violate an inmate's right to privacy. *See Williams v. Miller*, No. 9:17-CV-1332 (GTS/DJS), 2019 WL 4645509, at *4 (N.D.N.Y. Aug. 28, 2019), *report and recommendation*

*adopted*, 2019 WL 4643787 (N.D.N.Y. Sept. 24, 2019); *Levola*, 2010 WL 1160238, at *18

("[A]n instance of inadvertent disclosure of plaintiff's medical records . . . . [is] not sufficient to

state a claim for the violation of plaintiff's privacy rights which is cognizable under § 1983.");

*see also Doe v. Beard*, No. EDCV 13-02262 DDP (SPx), 2014 WL 3507196, at *6 (C.D. Cal.

July 14, 2014) (dismissing claim for disclosure of medical records because inmate alleged only

negligent conduct by defendants); *accord Warwick v. Doe*, No. 3:20-cv-227(JAM), 2020 WL

2768804, at *6 (D. Conn. May 27, 2020) (simple negligence of prison personnel does not

support deliberate indifference claim).

Mr. Hampton has not alleged facts showing that Defendant Rodriguez sent his medical

records to Mr. Thompson and, even if he did, that he did so intentionally.

Accordingly, Mr. Hampton fails to state a plausible claim against Defendant Rodriguez,

and that claim must be dismissed.

## B.  Supervisory Liability

In *Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020), the Second Circuit clarified the

standard to be applied to a claim for supervisory liability. In *Ashcroft v. Iqbal*, 556 U.S. 662

(2009), the Supreme Court rejected a theory of supervisory liability that permitted a supervisor to

be "held liable based on a lesser showing of culpability than the constitutional violation

requires." *Tangreti*, 983 F.3d a 617 (citing *Iqbal*, 556 U.S. at 677). The Second Circuit held that

"after *Iqbal*, there is no special rule for supervisory liability. Instead, a plaintiff must plead and

prove 'that each Government-official defendant, through the official's own individual actions,

has violated the Constitution.'" *Id.* at 618 (quoting *Iqbal*, 556 U.S. at 676).

Before *Tangreti* and *Iqbal*, the Second Circuit established five factors that could be used

to show the personal involvement of a supervisory official in a constitutional violation:

> (1) the defendant directly participated in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (internal citation omitted).

Following *Tangreti*, the second, fourth, and fifth *Colon* factors are no longer valid ways to establish the personal involvement of a supervisory official. *See Stone #1 v. Annucci*, No. 20-CV-1326 (RA), 2021 WL 4463033, at *8 (S.D.N.Y. Sept. 28, 2021) (noting district courts' rejection of the *Colon* factors after *Tangreti*).

Mere awareness of an issue is not sufficient to state a claim for supervisory liability. "A supervisor's 'mere knowledge . . .' is not sufficient because that knowledge does not 'amount[] to the supervisor's violating the Constitution.'" *Tangreti*, 983 F.3d at 616-17 (quoting *Iqbal*, 556 U.S. at 677)). Under *Tangreti*, therefore, the court must consider the available facts to determine whether Mr. Hampton has presented evidence showing that the actions of Defendants Shea and Furtick, supervisory officials, were sufficient to support a Fourteenth Amendment privacy claim.

Mr. Hampton alleges that Defendants Shea and Furtick should have better trained medical staff and ensured that privacy safeguards were in place and followed. Mr. Hampton attaches to his Complaint copies of prison directives designed to ensure the privacy of his medical information. He has alleged no facts suggesting that these procedures, if followed, were insufficient to protect his privacy. Instead, he alleges that some medical staff member did not follow those procedures, through an act of negligence. Mr. Hampton does not allege facts supporting his theory that staff were not trained in proper procedures.

Mr. Hampton alleges that Defendants Shea and Furtick were not aware of the issue until

8

after it had occurred. As a result, Mr. Hampton has not alleged any facts showing that Defendants Shea or Furtick violated his constitutional rights.

Accordingly, the claims against Defendants Shea and Furtick must be dismissed.

### C.  Declaratory Judgment Claim

Declaratory relief serves to "settle legal rights and remove uncertainty and insecurity from legal relationships without awaiting a violation of the rights or a disturbance of the relationship." *Colabella v. American Inst. of Certified Pub. Accountants*, No. 10-CV-2291 (KAM) (ALC), 2011 WL 4532132, at \*22 (E.D.N.Y. Sept. 28, 2011) (internal citation and quotation marks omitted). As a result, "[d]eclaratory relief operates prospectively to enable parties to adjudicate claims before either side suffers great damages." *Orr v. Waterbury Police Dep't*, No. 3:17-CV-788 (VAB), 2018 WL 780218, at \*7 (D. Conn. Feb. 8, 2018). In *Orr*, the Court dismissed the request for declaratory judgment that the defendants had violated the plaintiff's Fourth Amendment rights during his arrest because the request "concern[ed] only past actions." *Id.*

Although Mr. Hampton's Complaint suggests the seeking of damages only, his Prayer for Relief also seeks a declaratory judgment that the Defendants violated his rights. Because Mr. Hampton seeks declaratory relief based on actions of the Defendants in February 2022, Mr. Hampton's request for declaratory relief is not cognizable.

Accordingly, his claim for declaratory relief must be dismissed.

### IV.   CONCLUSION

In the absence of any viable claims for relief, Mr. Hampton's Complaint must be **DISMISSED**.

This dismissal is without prejudice, however, and Mr. Hampton may file an Amended

9

Complaint, if he can allege facts identifying who disclosed his medical information to Mr.

Thompson and showing that the action was more than negligence, by **September 9, 2022**.

**SO ORDERED** at Bridgeport, Connecticut, this 22nd day of July, 2022.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE

10